Syllabus.

## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### SLATER AND OTHERS V. SLATER.

January 16, 1919.

1. STATUTES—*Construction—Title—Revisals of Code.*—Where since an act was adopted there have been two general revisals of the Code in which the act was embodied without any reference to its original title, the restrictive title of the original act could not limit its construction, if the language of the act shows that it was intended to be more comprehensive than its title, but if the language is obscure in its meaning, the original title may be helpful in the construction of the act.

2. DOWER—*Commutation—Payment of Gross Sum.*—Prior to the act of 1877 (section 2281, Code of 1904), a widow could not have her dower commuted by the payment of a gross sum in lieu thereof without the consent of the heirs at law.

3. DOWER—*Commutation — Payment of Gross Sum — Consent of Heirs—Section 2281, Code of 1904.*—Before the enactment of section 2281, Code of 1904, there was no definite and certain method of ascertaining the present value of annuities, and several different methods had been used in different cases; and this statute was merely intended to remove these difficulties, and to provide a table or rule by which in proper cases the amount of the commuted value of dower or of an annuity is to be ascertained.

4. DOWER — *Commutation — Payment of Gross Sum — Consent of Heirs—Section 2281, Code of 1904.*—Section 2281 of the Code of 1904 does not change the pre-existing general rule which requires both the willingness of the widow and the consent of the heirs at law to the payment of a gross sum in lieu of dower.

5. DOWER—*Annuities—Commutation—Gross Sum.*— Under anomalous circumstances and because of the impossibility of following the general rule, a court of equity can direct a gross sum to be paid in lieu of an annuity without the consent of all parties interested.

6. EXECUTORS AND ADMINISTRATORS—*Debts of Decedent—Presumption of Payment.*—Two bonds drawn by the decedent, payable to his wife, were found among the papers of the decedent in a

·drawer in his safe at his store. At the death of the decedent the bonds were long overdue but there was nothing upon the papers or upon the decedent's books to indicate that either of them had been paid. There was no evidence that the wife kept any of her private papers at the store.

*Held:* That the legal inference to be drawn from the fact that these bonds long overdue were found as they were is either that they had never been delivered, or that, if delivered, being at his death in the decedent's possession, they had been paid.

7. EXECUTORS AND ADMINISTRATORS — *Bonds* — *Presumption of Ownership.*—Where two bonds and a certificate of deposit payable to the decedent, but endorsed by him to his wife, were in the possession of his wife at the death of the decedent, the presumption is that the bonds and the certificate of deposit had been delivered to and were the property of the wife.

8. EXECUTORS AND ADMINISTRATORS—*Bonds*—*Presumption of Ownership.*—A decedent endorsed a bond payable to him as payable to his wife. The bond was taken by the decedent to a bank for collection, and a witness testified that decedent told him that it was his wife's money. Decedent deposited the bond in the bank for collection, re-assigning the bond to himself by signing his wife's name.

*Held:* That the evidence showed that at the time of this transaction decedent was acting as agent for the benefit of his wife, and that the bond was the property of his wife.

9. EXECUTORS AND ADMINISTRATORS—*Admission of Decedent.*—The admission of a decedent that certain property in his possession belonged to his wife would bind him if he were living, and his heirs at law and distributees are equally bound by this admission.

Appeal from a decree of the Circuit Court of city of Williamsburg and county of James City, involving the settlement of a decedent's estate. From the decree both the heirs at law and the widow appealed.

*Reversed.*

The opinion states the case.

*Frank Armistead,* for the appellants.

*Henley, Hall, Hall & Peachy* and *T. H. Geddy, Jr.,* for the appellees.

PRENTIS, J., delivered the opinion of the court.

The petitioners, C. H. Slater, R. H. Slater and Bettie M. Harvey, brothers and sister and the heirs at law of R. B. Slater, who died suddenly intestate, complain of a decree entered in the chancery cause involving the settlement of the decedent's estate, so far as it sustains the claims of Mary Lou Slater, as his widow and as creditor of the estate; and she assigns cross-error in so far as the decree fails to do so.

[1-3]   1. The lands of the interstate, consisting of a large number of small parcels lying in different counties and cities, were sold by consent of the parties, and at her request and against the protest of the heirs at law, the court commuted the dower of the widow, allowing her a gross sum to be computed in accordance with section 2281 of the Code.

As the law was before that statute, which was adopted at the 1877 session, it is perfectly clear that in this State a widow could not have her dower commuted by the payment of a gross sum in lieu thereof without the consent of the heirs at law. *Wilson* v. *Davisson*, 2 Rob. (41 Va.) 384; *Simmons* v. *Lyles*, 27 Gratt. (68 Va.) 922; *Harrison* v. *Payne*, 32 Gratt. (73 Va.) 387.

The material part of the statute, which is relied upon for the view that the law has been changed in Virginia, reads thus:

Sec. 2281.   "When a party, as tenant for life, or by the curtesy, or in dower, is entitled to the annual interest on a sum of money, or is entitled to the use of any estate, or a part thereof, and is willing to accept a gross sum in lieu thereof, or the party liable for such interest, or affected by such claim, has the right to pay a gross sum in lieu thereof, or if the court in any legal proceeding decree a gross sum to be paid in lieu thereof, the sum shall be estimated accord-

ing to the then value of an annuity of six per cent. on the principal sum during the probable life of such person, according to the following table," etc. The table follows at the end of the section.

Before the enactment of that statute there was no definite and certain method of ascertaining the present value of annuities, and several different methods had been used in different cases. *Wilson* v. *Davisson, supra.*

It is argued with convincing force that this statute was merely intended to remove these difficulties, and to provide a table or rule by which in proper cases the amount of the commuted value of the dower or of the annuity is to be ascertained. The original title of the act goes very far to sustain this view, for that title was, "An act to establish a rule and table for computing the value of a life estate or annuity." While this restrictive title cannot now limit the construction to be put upon the section, if its language shows that it was intended both to provide a table and to change the pre-existing law, because since the act was adopted there have been two general revisals of the Code, and in both it has been embodied without any reference to the original title; still if the language is obscure in its meaning, this title is helpful. We must then, in the case, determine whether this statute should be construed as changing the pre-existing law in Virginia, requiring the assent of the heirs at law to the commutation of dower by the payment of a gross sum in lieu thereof when such settlement is desired by the widow.

[4, 5] It is observed that in *National Bank* v. *Taylor, et al.,* 112 Va. 1, 70 S. E. 534, Ann. Cas. 1912D, 40, decided long since the enactment of the statute, this court, citing the cases decided before its enactment, said: "As a general rule, a party who has a life estate in a fund arising from the proceeds of the sale of land is not entitled to have the value of his life estate commuted and paid to him in gross

instead of the annual interest on the fund, unless the parties in interest agree to it." It is true that in that case it was adjudged that by reason of the anomalous state of facts there existing, the general rule could not be followed because the fund available for investment was less than the principal amount on which the annuitant was entitled to interest, and that, therefore, some other mode must be adopted which, quoting from *Simmons* v. *Lyles, supra,* "would produce the greatest equality with the least inconvenience." It thus appears that under anomalous circumstances and because of the impossibility of following the general rule, a court of equity can direct a gross sum to be paid in lieu of an annuity without the consent of· all the parties interested.

*Bragg* v. *Tinkling Land Co.,* 115 Va. 1, 78 S. E. 541, is referred to as sustaining the opposing view, because there the bill of the widow expressly claimed that under section 2281 she was entitled to have her dower commuted and a gross sum paid to her, and this court said that the bill was not demurrable. This, however, is only a *dictum.* The question considered and decided in that case was that the heirs at law were necessary parties to the suit, inasmuch as it sought to have the dower assigned out of the unaliened lands in the hands of the heirs to the exoneration of those aliened by the husband in his lifetime. The question here involved was not contested, considered or determined.

The statute presents three alternatives, in either of which the table or rule provided thereby must be applied. The first clause requires its application when the widow or other annuitant is willing to accept a gross sum in lieu of the annuity. It is apparent that such willingness to accept a gross sum clearly implies that the person liable therefor, or whose interest is affected by the claim, has either tendered it, expressed a willingness to do so, or is

under obligation to do so.  Acceptance necessarily implies an offer of that which is accepted.  So that for this clause of the statute to operate there must be an offer to the annuitant thus to commute, or its equivalent.  The second alternative applies the table when the party liable for the annuity, or who is affected by such claim, has the right (unconditionally) to pay a gross sum in lieu thereof, and this certainly does not change the pre-existing law or confer any new right.  Such a right to pay must depend upon something outside of this statute.  Then the third alternative is that if the court in any legal proceeding shall decree a gross sum to be paid, the table or rule shall apply.  Here we think it equally apparent that no new jurisdiction is by the statute conferred upon the court, but that it is intended to require the application of the rule under any circumstances in which the court, by virtue of some jurisdiction otherwise existing, is authorized to enter such decree.  We think, then, that the only effect of the statute is to provide a rule for determining the gross value of an annuity, and that it does not change the pre-existing general rule which requires both the willingness of the widow and the consent of the heirs at law to the payment of a gross sum in lieu of dower.  This record discloses no anomalous circumstances which justify the court in ignoring this general rule, and it follows, therefore, that the trial court erroneously determined that the widow was entitled to have her dower thus commuted over the objection of the heirs at law.  One-third of the net proceeds of the land of which the widow was endowed should have been invested, and the court should have decreed that the interest thereon should be paid to her during her natural life.

[6]  2. Another question raised arises out of a claim asserted by the widow against the estate, that she is the owner of two bonds drawn by the decedent, payable to her, of $900 each, one dated May 25, 1908, payable sixty days

after date, and one dated June 14, 1910, payable ninety days after date. The decedent was killed by a stroke of lightning on Saturday evening, July 15, 1915, and on July 18, 1915, when the brother-in-law of the widow was examining his papers, trying to locate his will, he found these bonds in his store, in a drawer in his safe. There is nothing upon the papers or upon the decedent's books to indicate that either of them has been paid. In the answer of the widow, Mary Lou Slater, to the cross-bill filed by the defendants, among other things she says, in another connection, that the decedent kept his valuable papers in the store house used and occupied by him at the time of his death, while this respondent kept her valuable papers in the dwelling house used and occupied by her said husband and herself.

The commissioner reported against this claim, but upon exception to the report, the court adjudged Mary Lou Slater to be the legal owner of these two bonds, and established them as debts against the decedent's estate. We think that this was erroneous. The evidence fails to show that she kept any of her private papers at the store, which was a separate building though within a few feet of the dwelling. The legal inference to be drawn from the fact that these bonds, long overdue, were found as they were, is either that they had never been delivered, or that, if delivered, being at his death in the decedent's possession, that they have been paid. The claimant has failed to overcome these presumptions of law, which are adverse to her claim.

[7.] 3. The commissioner reported against the claim of Mary Lou Slater, that she is the owner of the following bonds: One of George A. Jones for $237.90, one of C. H. Slater for $1,000, one of George Allen and Lucinda Allen for $408.40; and of a certificate of deposit in the Peninsula Bank for $1,000. The facts as to this claim are, that these evidences of debt were all payable to the de-

cedent, but had been endorsed by him, each substantially in the same language, "Pay to M. L. Slater. (Signed) R. B. Slater." Upon the night of the death of the decedent and at her residence, Mary Lou Slater gave these bonds and certificate of deposit, which were in an envelope, to her brother for safekeeping. There is no contradiction of the facts stated, though there is some effort made to question the genuineness of R. B. Slater's signature.

They had no children, and it is shown that the deceased husband used his wife's funds freely, and signed her name to checks and other papers at will. It also appears that several years ago he used some of her money, and that in recent years he collected rents from property belonging to her. The legal inference to be drawn from these facts are, that these bonds and this certificate of deposit found in her possession, duly assigned to her, had been delivered and were the property of Mary Lou Slater, and that they do not belong to the estate of R. B. Slater as the commissioner reported. Being assigned to her by the original owner, her husband, and being found in her personal possession at the time of his death, in the absence of evidence to overcome such inferences, they are her property. The court erred, therefore, in overruling her exceptions to the commissioner's report and holding otherwise.

[8, 9] 4. On the 1st of September, 1914, R. H. Slater, one of appellees, executed and delivered to his brother, R. B. Slater, a bond for the sum of $1,950.39, payable six months after date, and on the 1st day of October, 1914, that bond was endorsed, "Pay to M. L. Slater, October 1, 1914, R. B. Slater." This bond was taken by the decedent for collection to the city of Newport News, and one of the witnesses, T. H. Geddy, testified that the decedent told him that it was his wife's money. Slater, the decedent, when he went to the bank, drew a draft upon the debtor for the amount of the bond and interest, and deposited it in the

Colonial State Bank for collection, re-assigning the bond
to himself by signing his wife's name. We think the evi-
dence shows that at the time of this transaction R. B.
Slater was acting as agent for the benefit of his wife, and
that this bond was the property of M. L. Slater. The ad-
mission of the decedent that it was her property would
bind him if he were living, and his heirs at law and dis-
tributees are equally bound by this admission.

It does not appear to be necessary to cite authority for
these latter propositions of law which are well settled.
The facts as shown by the evidence being clear, the legal in-
ferences to be drawn therefrom are equally free from doubt.
The court erred in overruling the exceptions of Mary Lou
Slater to the commissioner's report as to this bond also,
and she must be held to be the legal owner of the debt of
which it is the evidence.

The case will be remanded for such further proceedings
as may be necessary to effectuate the views here expressed.

*Reversed and remanded.*